No. 6261.

JAMES MONKS *v.* S. J. McGRADY.

1. RES ADJUDICATA—WARRANTY.—Suit was instituted in trespass to try title against a vendee for part of a tract of land. He made his vendor a party, alleging a warranty, but that the deed had been altered so that the warranty did not appear in it; the vendor denied the alleged alteration, and on trial plaintiff recovered, and, as between the original defendant and his vendor, the judgment was that defendant take nothing and that the vendor recover costs. Subsequently the vendee brought suit on his alleged warranty; the vendor pleaded the proceedings in the ejectment suit in bar. *Held,* the testimony showing the identity of the issue and of the testimony in both trials, the trial judge should have submitted the issue to the jury.

2. MISTAKE OR FRAUD—EVIDENCE.—In a suit to reform a deed, the evidence of mistake or fraud must be clear and satisfactory to the existence of the alleged mistake, etc.

APPEAL from Fannin.  Tried below before Hon. D. H. Scott.

June 2, 1885, McGrady sued Monks, alleging that May 19, 1883, the parties made a contract, Monks agreeing to convey to McGrady by a good and sufficient deed one hundred and forty-two and a half acres of land described, at four dollars per acre; that Monks made and delivered a deed for the land, receiving the price.

That January 3, 1885, H. J. McRae instituted a suit against McGrady and thereafter recovered judgment for eighty-eight acres of said land (referring to the papers, judgment, records and decree in said suit) and for costs; that before the sale Monks took McGrady over the land and pointed out the corners and represented falsely and knowingly that he had a good title to the whole tract; that he had had the title examined by eminent counsel, and that he would give McGrady as good a title as could be made in Texas; that all these representations were false and known by him to be false and were made for the purpose of overreaching McGrady; that McGrady, believing said representations were true, paid the purchase money on assurance of receiving such deed as Monks promised; that the parties came to Bonham and employed G. W. Blair, district clerk, to draw up a general warranty deed for the land; that said deed was so drawn.  McGrady examining and accepting it closed the sale and handed the deed back to Monks to sign and acknowledge, which he proceeded to do, but while he was signing his name to the deed he, without Grady's knowledge, covertly, after the deed had been examined, inserted the words " in, under or through me," thus changing the general warranty to a special warranty; that McGrady was not aware of the alteration until after he was sued by McRae; that induced by the fraudulent representations by Monks McGrady had paid out the purchase money, three hundred and fifty-two dollars; had expended money in costs, forty-three dollars, and attorney fees fifty dollars.  With very full allegations as to Monks's conduct, plaintiff asked three thousand five hundred dollars vindictive damages.

The defendant, Monks, answered, (1) excepting to the petition; (2) general denial; (3) the plea of former judgment. "For that, in the case of H. J. McRae v. S. J. McGrady, No. 2659, this defendant was made a party to said suit as a defendant by the plaintiff (McGrady) in this suit, wherein this plaintiff

charged this defendant with being a warrantor and having fraudulently changed said warranty deed to a quit claim deed; that this defendant answered said charges by a general denial and allegation that he only agreed to make said McGrady a special warranty deed and asking the court to dismiss him with his costs; that said issues were submitted to the court and there tried upon evidence of the parties, pro and con, and after hearing the evidence and the presentation of the case by the attorneys the court rendered judgment for defendant, discharging him with his costs against the plaintiff. Wherefore he says that the issues involved in this case are the same involved in the case of McRae v. McGrady, and were tried and adjudicated," etc.; that he had a good title to the land and had conveyed such title to McGrady."

The general demurrer of defendant was sustained and also the items of costs and attorney fees. By trial amendment plaintiff alleged that at the time of his purchase eighty-eight acres belonged to McRae and that Monks knew or might have known the fact; the suit and recovery by McRae.

On the trial McGrady testified substantially as his allegations in the petition. It appeared, however, that he had negotiated for the land with Monks's vendors, ten or twelve years before; that Monks offered more for the land and got it. He had lived near the land for many years. Blair testified that he wrote the deed on printed blank forms. He did not remember the change or addition of the words. Defendant Monks testified: "I told McGrady I would give him a special warranty deed—did not tell him I would give him a general warranty deed. We agreed on the trade, and got Blair to write the deed. It was written in a blank general warranty deed. I did not give Blair any instructions how to write the deed. McGrady seemed to know the title and claimed to be satisfied with it, I wrote the words 'in, under or through me,' before I signed the deed. McGrady paid the money, four dollars per acre."

On cross examination: "We were both present at Blair's office at the time of the writing and signing of the deed. Don't recollect that we told Blair to write a general warranty deed. I made the insertion of words 'in, under or through me,' at the time I signed the deed. I did not tell Blair or McGrady that I was putting in said insertion—did not think it was necessary to tell them of it."

The pleadings and judgment were read from the case of Mc-Rae v. McGrady. In the answer in the original suit, after plea of not guilty, defendant McGrady alleged his purchase of the one hundred and forty-two and a half acres from Monks, on May 19, 1883. And that "by agreement with Monks in the purchase, that said Monks agreed with this defendant, he would warrant and forever defend the said premises so conveyed by him to defendant against all persons lawfully claiming or to claim the the same or any part thereof; that after said trade was made, and all the terms of said sale agreed upon, and the deed had been drawn up according to said agreement, the said Monks, without the consent or knowledge of defendant, added after the clause of warranty of said title the words, 'in, under or through me;' that said words were discovered by defendant in the said deed for the first time since the institution of this suit; that said words were no part of said contract of sale, and the said deed without said words was the true deed agreed upon by defendant and said Monks, as evidence of said contract, and was so written by Blair, who wrote said deed for defendant and Monks. Wherefore defendant prays the court to cite said Monks to appear and defend this suit, and for the other relief, general and special, proper in the premises."

The answer of Monks, filed February, 1885, in original suit, after a general denial, is as follows: "For answer, defendant (Monks) denies all and singular the allegations wherein it is charged that he is liable on said warranty. For special answer this defendant says it is true that he sold the land, etc., but he says "there was nothing said between him and said McGrady about a general warranty; that he got Blair to write the deed conveying the premises to said McGrady; that Blair wrote the deed on a blank warranty deed; that he read the deed to this defendant, who inserted the words, 'in, under and through me;' that said deed was afterwards read to McGrady by Blair, who then and there accepted the same, and expressed himself satisfied; that McGrady took possession of said deed, and paid the consideration."

The judgment in McRea v. McGrady was read—McRea recovered the land, provisions were made for payment, etc., for improvements, etc., and that McGrady take nothing by this suit as to defendant Monks, and that defendant Monks go hence without day and recover of McGrady all costs herein expended.

It was also shown that on the trial of the McRae v. Mc-Grady and Monks suit February, 1885, and in which McRae recovered judgment for the land, etc., the same testimony as to the writing of the deed, the agreement to make the deed and the kind of deed, was submitted to the court by Monks and McGrady and the clerk, Blair, as was given on the trial of this cause for the same purpose.

Among other things the court charged the jury: "If the qualification to the warranty, the words 'in, under or through me' were put in the deed before its delivery, and plaintiff accepted the same knowing such words were in it, or if plaintiff agreed to accept the deed with these words in it, or to accept a special warranty deed, and that he did accept such deed, then you will find for the defendant."

The defendant asked the court to charge the jury "that if you believe from the evidence that in the suit of McRae v. McGrady, McGrady answered and alleged that James Monks agreed to give him a warranty deed, and that after said deed was written up said Monks, without his knowledge and consent, inserted the words alleged in plaintiff's petition, and that defendant answered denying said allegations; that said issue was tried before the district judge in said cause of McRae v. McGrady, and that the court rendered judgment on said issue, then I charge you that said plaintiff is estopped from denying the effect of said judgment." This was refused, the judge overruling it "because he did not think the pleadings or issues made in the case of McRae v. McGrady and Monks are the same as those involved in this case."

Judgment was for plaintiff for $377.75, and defendant appealed.

*Taylor & Galloway,* for appellants: On the pleadings. (Rev. Stats., 4817, 4818; vol. 1, White & Wil., secs. 1210, 1211; vol. 2, secs. 3, 394; Flanagan v. Ward, 12 Texas, 209; 2 Pomeroy Eq., secs. 875, 893; Kerr on Fraud, pp. 76, 77, 78, and notes.)

The former judgment was conclusive. (Bryan v. Bridge, 10 Texas, 149; Edrington v. Kiger, 4 Texas, 89; Tadlock v. Eccles, 20 Texas, 782; Teal v. Terrell, 48 Texas, 491; Freeman on Judgments, sec. 188; Bank of Oswego v. Babcock, 5 Hill, 152.)

*J. H. Lyday* and *Lusk & Thurmond,* for appellee: In a suit by a vendee against a vendor for deceit and false representa-

tions knowingly made by the vendor to the vendee, and relied upon by the vendee, where the vendor agrees to convey by a deed with covenants of general warranty, and afterwards clandestinely changes the instrument to a special warranty deed, and the vendee accepts the same in ignorance of such change, the doctrine in relation to the breach of warranty does not apply. (4 Texas, 75; 19 Texas, 303; 7 Wendell, N. Y., 500; 17 Id., 193; 13 Johnson, N. Y., 395; Kerr on Fraud and Mistake, p. 326, at bottom; also pages 328, 330, and notes; 13 Johnson, N. Y., 224; 13 Johnson, N. Y., 325; 6 Cowen, N. Y., 346; Hays v. Bonner, 14 Texas, 629; Rhode v. Allen, 27 Texas, 443.)

2. The petition does disclose an entirely different cause of action. (Philipowsky v. Spencer, 63 Texas, 604; Freeman on Judgments, secs. 252, 259.)

3. It was not necessary to show eviction. (19 Texas, 303; 7 Wendell, N. Y., 380; 17 Id., 193; 13 Johnson, N. Y., 395; Kerr on Fraud and Mistake, p. 326, at bottom, 328 to 330, and notes; 13 Johnson, N. Y., 224.)

WALKER, ASSOCIATE JUSTICE. Whatever right McGrady had to call Monks into the suit by McRae was based upon the allegation that Monks was his warrantor for the land in controversy. McGrady alleged that his deed from Monks had been tampered with so as not to contain the contract between them as to the warranty, asserting that the restricting words had been added without his knowledge. Monks denied this, insisting that the deed, when executed, had the restricting clause to the warranty and that its terms were understood by the parties. Whether this proceeding on the part of McGrady was to avail himself of his right to make his alleged warrantor a party (Rev. Stats., 4788), or was an effort to have the instrument reformed so as to express the actual contract between him and his vendor, it is clear that the matter in issue was the inquiry whether the qualifying words formed part of the deed when it was executed. The judgment of the court that McGrady take nothing and that Monks recover his costs was an adjudication of this matter between the parties.

This suit, brought by McGrady against Monks, in its results, depends upon whether the limited warranty was in fact in the deed. The court submitted it as a controlling fact to the jury, but refused to submit the plea of former judgment upon the issue, although pleaded and there was evidence supporting it.

Whether the deed had in it a general warranty or not was distinctly in issue in both suits; the same testimony for and against was used, and would be necessary to sustain or defeat the action or defense; the cause of action, the liability of Monks for the defective title was the same; the former trial was upon its merits. These facts meet all the ordinary tests requisite to judgment estoppels. (Freeman on Judgments, 256. 259; 63 Texas, 607; 48 Texas, 508; 20 Texas, 791; 4 Texas, 101.)

It was error to refuse the instruction asked by defendant as to the effect of the former judgment. The trial amendment was sufficiently specific to show a cause of action. What means of knowledge McGrady had and whether he was deceived was a matter of defense. If the deed, when executed, had in it the general warranty the right to recover would result upon the failure of title. The judgment in the former suit bound all parties to the suit. If the deed was only a special warranty no liability followed the judgment against McGrady for the land.

Where it is sought to rectify a deed for mistake or fraud the evidence must be clear and satisfactory. (Adams's Equity, 168 and cases; 52 Texas, 139; 47 Texas, 28; 27 Texas, 234, and cases cited, and 57 Texas, 238.) It is questionable whether the testimony in the record to the alleged alteration is satisfactory. McGrady and Monks contradict each other while the only other witness present can give no help, remembering nothing on the matter in dispute.

For the error above noted the judgment is reversed and cause remanded.

*Reversed and remanded.*

Opinion delivered May 22, 1888.